Dale M. Cendali
Joshua L. Simmons
Megan L. McKeown
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
megan.mckeown@kirkland.com

*Attorneys for Plaintiff Take-Two Interactive Software, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAKE-TWO INTERACTIVE SOFTWARE, INC., | Case No. 1:18-cv-2608 |
| Plaintiff, | ECF Case |
| - against - | |
| DAVID ZIPPERER, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY INJUNCTION .................................................................................................. 1

FACTUAL BACKGROUND ..................................................................................................... 3

    I.      TAKE-TWO ................................................................................................. 3

    II.    MR. ZIPPERER'S INFRINGING PROGRAMS ................................................. 4

ARGUMENT ............................................................................................................................ 6

    I.      TAKE-TWO IS LIKELY TO SUCCEED ON THE MERITS OF ITS
         COPYRIGHT INFRINGEMENT CLAIM ........................................................ 6

         A.    The Infringing Programs Create Derivative Works................................... 7

         B.    Playing GTAV Having Violated Take-Two's User Agreement
             Also Is Copyright Infringement ................................................................ 8

    II.    TAKE-TWO WILL BE IRREPARABLY HARMED BY
         MR. ZIPPERER'S INFRINGING PROGRAMS ................................................. 10

         A.    Mr. Zipperer's Infringing Programs Will Cause Immediate,
             Irreparable Harm to Take-Two ................................................................. 10

         B.    The Harm to Take-Two is Not Quantifiable and Cannot Be
             Corrected through Monetary Damages ...................................................... 13

    III.   THE BALANCE OF HARMS FAVORS TAKE-TWO ....................................... 15

    IV.   THE PUBLIC INTEREST WILL BE SERVED BY THE ISSUANCE OF
         AN INJUNCTION .............................................................................................. 17

CONCLUSION ........................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adv. Access Content Sys. Licensing Adm'r, LLC v. Tao*,
   689 F. App'x 661 (2d Cir. 2017) ....................................................................12, 13

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
   931 F. Supp. 2d 537 (S.D.N.Y. 2013)....................................................................7

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
   672 F.2d 607 (7th Cir. 1982) ................................................................................16

*Broad. Music, Inc. v. Prana Hosp., Inc.*,
   158 F. Supp. 3d 184 (S.D.N.Y. 2016)..............................................................11, 14

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998)................................................................................7, 8

*Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*,
   307 F.3d 197, 208 (3rd Cir. 2002) ........................................................................8

*Elsevier Inc. v. www.Sci-Hub.org*,
   No. 15 Civ. 4282, 2015 WL 6657363 (S.D.N.Y. Oct. 30, 2015) ...........................15

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
   844 F.3d 79 (2d Cir. 2016)...................................................................................10

*HarperCollins Publishers L.L.C. v. Gawker Media LLC*,
   721 F. Supp. 2d 303 (S.D.N.Y. 2010)..............................................................10, 11

*Island Software & Computer v. Microsoft*,
   413 F.3d 257 (2d Cir. 2005)...................................................................................6

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   136 S.Ct. 1979 (1975)...........................................................................................17

*Kurt S. Alder, Inc. v. World Bazaars, Inc.*,
   No. 95 Civ. 5610, 1995 WL 457991 (S.D.N.Y. 1995) .........................................18

*MAI Sys. Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir. 1993) ..................................................................................8

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) ............................................................................7, 8

*Midway Mfg. Co. v. Artic Int'l, Inc.*,
   547 F. Supp. 999 (N.D. Ill. 1982) ....................................................12, 17, 18

*Midway Mfg. Co. v. Artic Int'l, Inc.*,
   704 F.2d 1009 (7th Cir. 1983) ...............................................................................7

*MPD Accessories B.V. v. Urban Outfitters*,
   No. 12 Civ. 6501, 2014 WL 2440683 (S.D.N.Y. May 30, 2014)....................12, 13

*My-T Fine Corp. v. Samuels*,
   69 F.2d 76 (2d Cir. 1934) .....................................................................................17

*Omega Imp. Corp. v. Petri–Kine Camera Co.*,
   451 F.2d 1190 (2d Cir. 1971)................................................................................15

*Rovio Entm't Ltd. v. Allstar Vending Ltd.*,
   97 F. Supp. 3d 536 (S.D.N.Y. 2015)....................................................................16

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010).....................................................................................13

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
   691 F.3d 182 (2d Cir. 2012)...................................................................................7

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
   642 F. Supp. 2d 167 (S.D.N.Y. 2009)....................................................................16

*Stern Elecs., Inc. v. Kaufman*,
   523 F. Supp. 635 (E.D.N.Y. 1981) .........................................................................8

*Tecnimed SRL v. Kidz-Med, Inc.*,
   763 F. Supp. 2d 395 (S.D.N.Y. 2011)....................................................................14

*Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.*,
   60 F.3d 27 (2d Cir. 1995) ......................................................................................15

*Touro Coll. v. Fondazione Touro Univ. Rome Onlus*,
   No. 16 Civ. 3136, 2017 WL 4082481 (S.D.N.Y. Aug. 31, 2017) ............................9

*Vernor v. Autodesk, Inc.*,
   621 F.3d 1102 (9th Cir. 2010) .................................................................................9

*Warner Bros. Entm't v. RDR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008)...............................................................16, 17

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008)....................................................................................................16

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012) ..................................... *passim*

**Statutes**

17 U.S.C. § 106..................................................................................................6

17 U.S.C. § 106(2)..........................................................................................7, 8

17 U.S.C. § 410(c)..............................................................................................7

Plaintiff Take-Two Interactive Software, Inc. ("Take-Two") submits this memorandum of law in support of its motion for a preliminary injunction against Defendant David Zipperer ("Mr. Zipperer").

## PRELIMINARY INJUNCTION

In a transparent attempt to profit at Take-Two's expense, Mr. Zipperer has developed and sells software programs for cheating in and manipulating Take-Two's *Grand Theft Auto V* video game ("GTAV") and its multiplayer feature *Grand Theft Auto Online* ("GTAO") to the detriment of Take-Two and those that play its games.  In essence, Mr. Zipperer is free-riding on Take-Two's intellectual property to sell a commercial product that interferes with the carefully orchestrated and balanced gameplay that Take-Two created for its players.

Each element for the issuance of a preliminary injunction is met in this case.  On the likelihood of success prong, Mr. Zipperer's software programs violate Take-Two's rights for two reasons.  First, Mr. Zipperer's programs create an unauthorized altered, derivative version of GTAV that added new features and game elements to the GTAO multiplayer feature.  Second, Mr. Zipperer is liable for copyright infringement for the independent reason that a license from Take-Two is required to play GTAV.  Because use of Mr. Zipperer's programs violates the licensing conditions in Take-Two's End User Licensing Agreement, playing GTAV after having violated those terms is no longer licensed and, thus, also is an infringement.  Mr. Zipperer is liable directly for his own actions and contributorily for the infringements of his programs' users.

The second element of the preliminary injunction test is met because, without an injunction, Take-Two would be irreparably harmed in at least three different ways.  First, Take-Two is losing control of its copyrighted work, as manifested by Mr. Zipperer's selling of programs that create alternate versions of GTAV using Take-Two's intellectual property and

goodwill to interfere with normal gameplay.   Second, Mr. Zipperer's conduct irreparably harms Take-Two's reputation.   Because GTAO is a multiplayer game, someone who has purchased Mr. Zipperer's infringing program has the unfair advantage of using certain features supplied by Mr. Zipperer—which would otherwise not be accessible to them in the game—against players who have not purchased Mr. Zipperer's program.   This is unfair to those players and interferes with the dynamics of Take-Two's intended gameplay.   This harms Take-Two's reputation with its players.   Finally, GTAO is a free game feature (for those who have already purchased GTAV) that is regularly updated with new content.   This "free to play" model is supported by sales of virtual currency to the players who use it to purchase in game items.   Mr. Zipperer also causes irreparable harm to Take-Two by selling users a product that allows them to create unlimited virtual items, including virtual currency, competing with Take-Two's sales of legitimate virtual currency which it uses to continually update and maintain GTAO.   Ultimately, all of this diminishes the value and demand for playing Take-Two's video games.

No amount of money can compensate Take-Two for these harms, which would be impossible to calculate.   Moreover, even if damages could be calculated, Mr. Zipperer would likely be unable to satisfy any judgment as Mr. Zipperer claims to be unemployed.

The balance of hardships and public interest factors also weigh in favor of the issuance of an injunction.   Take-Two would be irreparably injured in the absence of the injunction.   By contrast, the only harm to Mr. Zipperer is losing the ability to profit from his infringement, which is not a cognizable harm under the law.   The public interest will be served by the issuance of an injunction, because the Copyright Act evidences a public interest in rewarding and securing the rights of creativity and creative expression.   More specifically, there is a strong public interest in protecting legitimate game players from those who cheat to gain an unfair advantage

and disrupt the normal gameplay experience through the tools and features gained by Mr. Zipperer's programs.  The public also is served by ensuring that Take-Two's investment and the integrity of its work are protected to encourage the development of new, fun games for the public.

After repeated efforts to encourage Mr. Zipperer to stop voluntarily were rebuffed, Take-Two had no choice but to file this action and bring this motion to protect its intellectual property rights from further infringement and to protect the experience of Take-Two's gamers.  As each of the preliminary injunction factors supports granting an injunction, Take-Two respectfully requests that its motion be granted.

## FACTUAL BACKGROUND

### I.     TAKE-TWO

Take-Two is the developer and publisher of best-selling video game software, including Take-Two's multiplayer game *Grand Theft Auto Online*.  Declaration of David Andrews, dated March 23, 2018, ("Andrews Decl.") ¶ 2.  GTAO is a free game feature—for those who have already purchased GTAV—that is regularly updated with new content.  *Id.* ¶ 13.  This "free to play" model is supported by sales of virtual currency to the players who use it to purchase in game items.  *Id.*; *see also* Declaration of Megan McKeown, Esq., dated March 23, 2018, ("McKeown Decl.") Ex. 2 (noting that "GTA Online frequently gets updated with meaningful content.  Though updates are free, players have the choice to buy in-game items with real-world cash").

GTAV is widely recognized as one of the most popular and innovative games available on the market, and Take-Two has earned numerous awards both in the United States and abroad as a result.  McKeown Decl. Exs. 2–4.  In particular, 2013's *Grand Theft Auto V* is the best-

selling video game in United States history and broke seven Guinness World Records related to its sales and popularity.  *Id.* Exs. 2–3.

Creating a single Take-Two game, including GTAV, requires substantial effort and creativity.  *Id.* Ex. 5.  Although Take-Two does not release development cost information, it has been estimated that GTAV cost over $250 million to develop and market.  *Id.* Ex. 4.

GTAV is protected by Take-Two's copyrights, all of which are solely owned by Take-Two.  McKeown Decl. ¶ 10, Ex. 1.   GTAV also is protected by the terms of Take-Two's End User License Agreement ("User Agreement"), to which all users of GTAV must affirmatively assent.  Andrews Decl. ¶ 3, Ex. 1.  The User Agreement makes clear that permission to use GTAV is conditioned on users agreeing (1) "not to . . . prepare derivative works based on, or otherwise modify the Software, in whole or in part," (2) "not to  . . . restrict or inhibit any other user from using and enjoying any online features of the Software," and (3) "not to . . . cheat or utilize any unauthorized robot, spider, or other program in connection with any online features of the Software." *Id.* Ex. 1, at 1–2.

## II.   MR. ZIPPERER'S INFRINGING PROGRAMS

Mr. Zipperer created a program called "Menyoo," which is a cheating or "griefing" program for the GTAO multiplayer feature of GTAV.  *Id.* ¶ 5.  GTAO is played in the same virtual world as the main GTAV single player game, but up to 30 players can interact in the same space at the same time.  *Id.* ¶ 2.  Menyoo may be used to cheat for the benefit of the player using it or to "grief" another player by using the program to interfere with their gameplay experience. *Id.* ¶ 5.  Menyoo allows users to perform unauthorized actions in the game, including without limitation (i) causing players to teleport, (ii) creating game objects such as vehicles and cash bags, (iii) creating game "powers", such as causing the player to be invincible, (iv) the creation

of virtual currency, (v) granting access to weapons and ammunition, and (vi) granting reputation points.  *Id.* ¶ 6.   These actions can be used to change the game for the user of the program and other players who do not have the program installed.  *Id.*  To acquire Menyoo's bundled cheating tools and features, users could purchase Menyoo's unauthorized features at a price of just $10.00.  *Id.* ¶ 6.  Users could make this payment through PayPal or through other forms of payment, including Steam and Amazon gift card keys.  McKeown Decl. ¶ 5.

Take-Two contacted Mr. Zipperer, who is one of the creators and primary developers behind Menyoo.  *Id.* ¶ 3.  Mr. Zipperer was informed that Menyoo violated Take-Two's User Agreement and infringed its copyrights.  *Id.*  Take-Two offered Mr. Zipperer the opportunity to resolve the matter without judicial intervention, and Mr. Zipperer initially appeared to cooperate with Take-Two by shutting down Menyoo, confirming that he would not continue his activities, and providing the information that Take-Two requested to facilitate settlement.  *Id.* ¶ 4.  Over time, however, Mr. Zipperer became less and less responsive until the point when he stopped responding to Take-Two.  *Id.* ¶ 7.

The reason that Mr. Zipperer stopped responding became clear to Take-Two when, a few weeks ago, Take-Two learned that after agreeing to shut down Menyoo and cease his bad actions, Mr. Zipperer had secretly developed and distributed another cheat program called "Absolute."  Andrews Decl. ¶ 7.  Like Menyoo, Absolute is a cheating and "griefing" tool for the GTAO multiplayer feature of GTAV that allows users to perform unauthorized actions, including without limitation creating and affecting similar in-game content and abilities as Menyoo.  Absolute is currently offered to users for a price of $20 or $40, depending on the feature set.  Andrews ¶ 8.

As Mr. Zipperer failed to respond to repeated correspondence regarding executing his

written agreement with Take-Two, Take-Two followed up with a letter from outside counsel on March 15, 2018 reminding Mr. Zipperer of the infringing nature of his activities and instructing him to immediately cease his actions.  McKeown Decl. ¶ 8.  Mr. Zipperer failed to respond by the deadline set forth in the letter.  *Id.* ¶ 9.

Accordingly, left with no option to ensure that Mr. Zipperer would not continue to infringe Take-Two's rights through further cheating programs, Take-Two brought this action to enjoin Mr. Zipperer from producing or distributing any computer programs that alter Take-Two's games, including without limitation Menyoo and Absolute (collectively, the "Infringing Programs").

## ARGUMENT

"In a copyright case, a district court may grant a preliminary injunction when plaintiffs demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) a balance of the hardships tipping in their favor; and (4) non-disservice of the public interest by issuance of a preliminary injunction."  *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012).

## I.   TAKE-TWO IS LIKELY TO SUCCEED ON THE MERITS OF ITS COPYRIGHT INFRINGEMENT CLAIM

"A claim of copyright infringement under federal law requires proof that (1) the plaintiff had a valid copyright in the work allegedly infringed and (2) the defendant infringed the plaintiff's copyright by violating one of the exclusive rights that 17 U.S.C. § 106 bestows upon the copyright holder."  *Island Software & Computer v. Microsoft*, 413 F.3d 257, 260 (2d Cir. 2005).

As to the first prong, Take-Two owns the copyrights to the creative expression in GTAV.

McKeown Decl. ¶ 10; *see Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 139 (2d Cir. 1998) (discussing the creative expression in plaintiff's work).  Moreover, it owns a U.S. copyright registration for that software.  McKeown Decl. ¶ 10, Ex. 1.  As its registration was issued within five years of GTAV's publication, *id.* ¶ 10, it is "prima facie evidence of both valid ownership of copyright and originality," raising a presumption of validity.  *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 549 (S.D.N.Y. 2013); *see also* 17 U.S.C. § 410(c); *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012). Moreover, there is no question that GTAV is a creative, original video game.  McKeown Decl. Ex 5.

As to the second prong, the Infringing Programs infringe Take-Two's copyrights in two ways.  First, the Infringing Programs create unauthorized derivative versions of GTAV.  *See infra* 7.  Second, because use of the Infringing Programs violates the licensing conditions in Take-Two's User Agreement, playing GTAV after having violated those terms is no longer licensed and, thus, an infringement.  *See infra* 8.  Each is discussed in turn below.

## A.     The Infringing Programs Create Derivative Works

Take-Two holds the exclusive right "to prepare derivative works based upon the copyrighted work."  17 U.S.C. § 106(2).  The law is clear that unauthorized computer programs that add new features to a video game or other software infringe this right.  For example, in *Midway Manufacturing Co. v. Artic International, Inc.*, the Seventh Circuit affirmed enjoining a defendant that created a version of the *Galaxian* video game that operated at a higher speed than authorized by the game developer, because doing so created a derivative work and infringed the developer's copyrights.  704 F.2d 1009, 1013 (7th Cir. 1983).  Similarly, in *Micro Star v. Formgen Inc.*, the Ninth Circuit held that the defendant's video game package of "user-created

levels" was a derivative work, because the alterations, when applied to Micro Star's video game, relied on the story and creative elements of the original game.  154 F.3d 1107, 1112 (9th Cir. 1998).  The unauthorized alterations infringed Micro Star's copyrights.  *Id.*  And in *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, the Third Circuit held that the defendant's alteration of a copy of the plaintiff's software to add additional features created an infringing derivative work.  307 F.3d 197, 208 (3rd Cir. 2002).

Here, Mr. Zipperer's Infringing Programs infringe Take-Two's derivative work right by adding unauthorized elements to GTAV's multiplayer feature GTAO, as well as by creating counterfeit items within the game (which can be sold in the game for virtual currency), including counterfeit virtual currency. Andrews Decl. ¶¶ 6, 13.  By adding such additional user elements without Take-Two's authorization, Mr. Zipperer's Infringing Programs clearly infringe Take-Two's copyrights for the reasons discussed above.  17 U.S.C. § 106(2); *see also Castle Rock*, 150 F.3d at 135 (affirming permanent injunction against derivative work); *Stern Elecs., Inc. v. Kaufman*, 523 F. Supp. 635, 641 (E.D.N.Y. 1981) (granting preliminary injunction enjoining defendant from infringing plaintiff's copyrighted video game and ordering defendants to deliver infringing video games to the court for impoundment), *aff'd*, 669 F.2d 852 (2d Cir. 1982).

## B.   Playing GTAV Having Violated Take-Two's User Agreement Also Is Copyright Infringement

Beyond making improper derivative works, Mr. Zipperer infringes Take-Two's rights in another way.  Running a computer program requires a reproduction for purposes of copyright law, because it creates a copy in the user's random access memory (RAM).  As a result, the courts are clear that a license is required to operate a computer program or video game software. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517 (9th Cir. 1993).  In recognition of this fact, software developers and video game publishers license to their legitimate users the right to

operate their programs, but they also condition that license on certain terms. *See, e.g., Vernor v. Autodesk, Inc.*, 621 F.3d 1102 (9th Cir. 2010). When the terms of the license are violated, the use is no longer licensed, resulting in copyright infringement. *Id.* at 1112 (holding that unlicensed operation of software violates copyright holder's reproduction right); *see also Touro Coll. v. Fondazione Touro Univ. Rome Onlus*, No. 16 Civ. 3136, 2017 WL 4082481, at *12 n.15 (S.D.N.Y. Aug. 31, 2017) (noting that "if the nature of a licensee's violation consists of a failure to satisfy a condition to the license, it follows that the rights dependant [sic] upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright" (internal quotation marks, citations, and alterations omitted)).

Here, as in the cases discussed above, the license to use GTAV is conditioned on adherence to Take-Two's User Agreement. Andrews Decl. ¶ 3. Among other things, it prohibits the creation of derivative works and cheating. *Id.* Of particular relevance to this case, the User Agreement states that the license is conditioned on the user agreeing (1) "not to . . . prepare derivative works based on, or otherwise modify the Software, in whole or in part," (2) "not to  . . . restrict or inhibit any other user from using and enjoying any online features of the Software," and (3) "not to . . . cheat or utilize any unauthorized robot, spider, or other program in connection with any online features of the Software." *Id.* Ex. 1, at 1–2. The Infringing Programs do all of these prohibited things. As a result, by setting up and allowing others to play the Infringing Programs, which is itself unlicensed and constitutes copyright infringement. *See Vernor*, 621 F.3d at 1112; *Touro Coll.*, 2017 WL 4082481, at *12 n.15.

* * *

In addition to Mr. Zipperer's own direct liability, he also is contributorily liable for the

inducement of the same infringement by the Infringing Programs' users. *See EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99–100 (2d Cir. 2016) (rejecting defendant's challenge to jury finding of contributory infringement and noting that "[a] contributory infringer is 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another'"). Accordingly, Mr. Zipperer has infringed Take-Two's copyrights in two, distinct ways both directly and contributorily, and Take-Two is likely to succeed on the merits of both legal theories.

## II.   TAKE-TWO WILL BE IRREPARABLY HARMED BY MR. ZIPPERER'S INFRINGING PROGRAMS

### A.   Mr. Zipperer's Infringing Programs Will Cause Immediate, Irreparable Harm to Take-Two

A preliminary injunction is available where there is a likelihood of irreparable harm to the plaintiff in the absence of such an order. *WPIX*, 691 F.3d at 278. Irreparable harm is "harm to the plaintiff's legal interests that could not be remedied after a final adjudication." *Id.* at 285. "Harm may be irreparable where the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss." *Id.* In this case, Take-Two is irreparably harmed by Mr. Zipperer's actions in three separate ways.

***First***, courts often find irreparable harm where plaintiff would lose "control[]" over plaintiff's "carefully orchestrated" plan for the copyrighted work. *HarperCollins Publishers L.L.C. v. Gawker Media LLC*, 721 F. Supp. 2d 303, 307 (S.D.N.Y. 2010) (finding irreparable harm where defendant published portions of plaintiff's unreleased book, without permission, in contravention of plaintiff's planned promotional strategy for its book and its agreements with its licensees, thus causing plaintiff to lose control over the release of its product and the commercial advantage that comes from controlling this launch).

Mr. Zipperer's Infringing Programs cause Take-Two to lose control over Take-Two's "carefully orchestrated" plan for how GTAV's multiplayer feature GTAO is designed to be played. *HarperCollins*, 721 F. Supp. 2d at 307.  By adding such features, including teleporting, the creation of objects, and other unauthorized features, Mr. Zipperer has altered Take-Two's work for himself in disregard of Take-Two's User Agreement and copyright rights, to exploit GTAV for his own economic advantage.  *WPIX*, 691 F.3d at 285 (finding irreparable harm and granting preliminary injunction where defendant's streaming of copyrighted programming "would dilute plaintiffs' . . . control over their product" and interfere with the regularly scheduled transmission of this programming, thus destabilizing the television industry).  Take-Two expends countless hours to create innovative, popular games.  McKeown Decl. Ex. 5.  If everyone were allowed to alter GTAV for profit, it would cause significant harm to Take-Two, its carefully crafted game model, and incentives to develop new games.  Losing control over how GTAV is designed to be played is a quintessential example of a company losing control over its copyrighted works and its statutorily granted right to exploit such works to its own commercial advantage.  *See HarperCollins*, 721 F. Supp. 2d at 306.

**Second**, courts "routinely find the harm suffered by plaintiffs in copyright cases to be 'irreparable' on the theory that . . . diminished reputation can be difficult if not impossible to measure."  *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016).  Here, the unlimited availability of Mr. Zipperer's Infringing Programs will cause untold, irreparable harm to the reputation of Take-Two, because Take-Two's business depends on maintaining a positive reputation among video game consumers and ensuring users continue to enjoy playing and purchasing Take-Two video games.  Andrews Decl. ¶ 12.  Mr. Zipperer's Infringing Programs interfere with the enjoyment of Take-Two's game by consumers who have

- 11 -

not installed the Infringing Programs. *Id.* And consequently, Take-Two's reputation for maintaining the integrity of its gaming environment will be harmed, discouraging users from future purchases and game play. *See Midway Mfg. Co. v. Artic Int'l, Inc.*, 547 F. Supp. 999, 1014 (N.D. Ill. 1982) (irreparable harm found where defendant's "speed-up kit" altered plaintiff's game in a way that made it "considerably more difficult, for the unskilled player in particular" and where it was "very possible, if not likely, that that [would] discourage those individuals from playing [plaintiff's] video games"), *aff'd*, 704 F.2d 1009.

Once consumers decide to stop playing GTAV or stop buying Take-Two products, it will be very difficult to un-ring that bell. Consumers who purchased GTAV in the past to play GTAO may never return to the game in the future. Andrews Decl. ¶ 15. And this harm ultimately affects Take-Two's business model, customer relations, and the gaming industry. *Id.* ¶ 14; *Adv. Access*, 689 F. App'x at 662 (affirming preliminary injunction and finding of irreparable harm where defendant's action would allow users to circumvent encryptions on plaintiff's software thereby "undermin[ing plaintiff's] business model"); *WPIX*, 691 F.3d at 285 (finding irreparable harm where defendant's television streaming program would "drastically change the industry, to plaintiffs' detriment"). Thus, an injunction to stop the disruption and alteration of the game experience is essential. *See Midway*, 547 F. Supp. at 1015.

***Finally***, courts find harm irreparable where there would be a "significant undercutting of [plaintiff's] price points." *MPD Accessories B.V. v. Urban Outfitters*, No. 12 Civ. 6501, 2014 WL 2440683, at *10 (S.D.N.Y. May 30, 2014). Here, as part of Take-Two's game, users can choose to enhance their gaming experience through the use of certain items, but users must either earn the currency through gameplay or users must purchase the currency and items from Take-Two. Andrews Decl. ¶ 13; McKeown Decl. Ex. 2. With Mr. Zipperer's Infringing Programs,

gamers can have unlimited digital currency and other items for the low price of $10 for Menyoo or $20 or $40 for Absolute, currency and items which would otherwise need to be earned or purchased from Take-Two.  Andrews Decl. ¶¶ 6, 8, 13.

Thus, the unlimited digital currency and other items made available by Mr. Zipperer's Infringing Programs circumvent Take-Two's normal processes, and undermine Take-Two's business model and the pricing of its currency and in-game items.  *MPD*, 2014 WL 2440683, at *10; *see also Adv. Access Content Sys. Licensing Adm'r, LLC v. Tao*, 689 F. App'x 661, 662 (2d Cir. 2017) (affirming preliminary injunction and finding of irreparable harm where defendant's action would allow users to circumvent encryptions on plaintiff's software thereby "undermin[ing plaintiff's] business model").  Purchases of legitimate currency and other items from Take-Two are important to Take-Two's business, as such purchases support the continued development of high-quality, state of the art video games.  Andrews Decl. ¶ 13; *see WPIX*, 691 F.3d at 285 (finding irreparable harm where, among other things, quantity and quality of efforts to create new works would be diminished by defendant's conduct, as would the value of new works).

**B.     The Harm to Take-Two is Not Quantifiable and Cannot Be Corrected through Monetary Damages**

Because the harm is irreparable, monetary damages are insufficient to compensate Take-Two for the harm it will suffer if Mr. Zipperer's Infringing Programs are permitted to continue. The damages that Take-Two will suffer cannot be quantified readily, as damages are notoriously difficult to calculate in copyright infringement cases.  *WPIX,* 691 F.3d at 286 (granting preliminary injunction where "plaintiffs' losses would be difficult to measure"); *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("[C]ourts have tended to issue injunctions in this context because 'to prove the loss of sales due to infringement is . . . notoriously difficult.'").

This is particularly true in the video game market, where revenue varies widely from game to game.  McKeown Decl. Ex. 6.

Take-Two would have no way of knowing how much revenue it will lose as a result of Mr. Zipperer's Infringing Programs.  Andrews Decl. ¶ 15.   For example, it would be impossible to calculate the number of players who stop playing GTAV's multiplayer feature GTAO altogether due to cheating and griefing by users of Menyoo or Absolute.  *Id.*; *see Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 411 (S.D.N.Y. 2011) ("[I]t would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come.") (citation omitted)), *aff'd*, 462 F. App'x 31 (2d Cir. 2012).  Likewise, it also would be impossible to quantify the reputational harm that Take-Two will suffer as a result of losing credibility with gamers who play GTAV honestly and fairly without Mr. Zipperer's cheating and griefing tools. Andrews Decl. ¶ 15; *Broad. Music*, 158 F. Supp. 3d at 195 ("[D]iminished reputation can be difficult if not impossible to measure.").  Finally, it would be impossible to know how many consumers purchased Mr. Zipperer's Infringing Services just to have the benefit of unlimited digital currency and objects instead of purchasing those items from Take-Two.  *Id.*  It would be especially difficult to calculate losses that are attributable to untraceable payments to Mr. Zipperer.  McKeown Decl. ¶ 5.

Under these circumstances, it would be grossly unfair to deny Take-Two injunctive relief when there is "no assurance that damages could be reasonably calculated at trial," only to later deny it damages because they are too speculative to calculate.  *WPIX,* 691 F.3d at 286 ("[I]njunctive relief appropriate 'to avoid the unfairness of denying an injunction to a plaintiff on the ground that money damages are available, only to confront the plaintiff at a trial on the merits

with the rule that [the quantification of] damages must be based on more than speculation.'" (quoting *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 38 (2d Cir. 1995)).

Finally, there is a high risk that, to the extent damages could be awarded, Mr. Zipperer would be unable to satisfy the damages award.  During one telephone conversation between Take-Two's counsel and Mr. Zipperer, Mr. Zipperer stated that he was unemployed and that he had to borrow a telephone to participate in the call with Take-Two's counsel.   McKeown Decl. ¶ 6.  Thus, given Mr. Zipperer's insolvency, it is highly unlikely that Mr. Zipperer will be able to compensate Take-Two for the harm his Infringing Programs have caused and continue to cause. This further militates toward granting a preliminary injunction.  *See WPIX,* 691 F.3d at 286 ("[U]nlikelihood that defendant[s] . . .  would, in any event, be able to satisfy a substantial damage award" further supports a finding of irreparable harm" (quoting *Omega Imp. Corp. v. Petri–Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir. 1971)); *Elsevier Inc. v. www.Sci-Hub.org*, No. 15 Civ. 4282, 2015 WL 6657363 at *4 (S.D.N.Y. Oct. 30, 2015) (harm "likely irreparable because the scale of any money damages would dramatically exceed Defendants' ability to pay.").

*          *          *

In sum, Mr. Zipperer's Infringing Programs will cause immediate, untold harm to Take-Two's business and the value of its copyrighted works, and deprive Take-Two of the control over its copyrighted software that the law guarantees.  This harm cannot be corrected through mere damages.  Accordingly, injunctive relief is proper.

## III.   THE BALANCE OF HARMS FAVORS TAKE-TWO

In assessing whether the balance of hardships weighs in favor of granting a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on

each party of granting or withholding the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).  For example, where "the absence of an injunction would result in the continued infringement of [a copyright holder's] property interests in the copyright material," it supports granting an injunction.  *See WPIX*, 691 F.3d at 287.  By contrast, losing the opportunity to infringe the copyright holder's content does not weigh against granting an injunction.  *See Rovio Entm't Ltd. v. Allstar Vending Ltd.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) (finding the balance of hardship tipped in plaintiff's favor where defendant's only harm was losing the chance to copy plaintiff's copyrighted video games); *Warner Bros. Entm't v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (finding that defendant suffered no hardship where the only harm was the "loss of the chance to sell an infringing book").

As noted above, the harm to Take-Two is substantial.  *See supra* 10–13; Andrews Decl. ¶¶ 10–15.  In contrast to the harm that Take-Two will suffer, Mr. Zipperer's only "harm" from Take-Two's requested injunctive relief is that he will no longer be able to infringe GTAV and reap the profits from doing so.  But the Second Circuit has made clear, however, that a defendant "cannot be legally harmed by the fact that it cannot continue" infringing a plaintiff's copyrighted work, "even if this ultimately puts [the defendant] out of business."  *WPIX*, 691 F.3d 287; *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 197 (S.D.N.Y. 2009) (where defendant infringed plaintiff's copyrighted software, the "loss of the ability to engage in unauthorized conduct and the concomitant business opportunities that such activities provide," did not constitute hardship); *see also Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 620 (7th Cir. 1982) (finding that balance of hardships did not weigh against entry of preliminary injunction where defendant's "only alleged hardship is the profits it would lose if enjoined" from marketing defendant's infringing video game).  As Judge Learned Hand has

noted, "advantages built upon a deliberately plagiarized [product] do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed." *My-T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934).  All that Mr. Zipperer risks losing is the ability to infringe Take-Two's copyrights, which is not a legally cognizable harm.  Accordingly, the balance of the hardships favors entry of Take-Two's proposed injunction.

## IV.   THE PUBLIC INTEREST WILL BE SERVED BY THE ISSUANCE OF AN INJUNCTION

In this case, the public will be served by the issuance of injunctive relief for multiple reasons.  **First**, there is a strong public interest in protecting legitimate game players from those who cheat to gain an unfair advantage and disrupt the normal gameplay experience through the tools and features gained by Mr. Zipperer's Infringing Programs.  *See generally Midway*, 547 F. Supp. at 1015 (granting preliminary injunction against defendant's infringing "speed-up" kits that "alter[ed] the play of [plaintiff's] game").  Gamers will still be able to play GTAV, but they must do so in a manner consistent with Take-Two's User Agreement to avoid disruptive gameplay.  Andrews Decl. ¶ 4; *see WPIX*, 691 F.3d at 288 (finding that "the public will still be able to access plaintiff's programs through means other than defendant's services," as a reason why the public interest was not harmed by granting a preliminary injunction).

**Second**, there is a strong public interest in "preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Warner Bros.*, 575 F. Supp. 2d at 553.  Take-Two invests considerable resources in creating some of the most cutting-edge games in the world, including GTAV.  McKeown Decl. Exs. 2–5.  The public benefits by ensuring that Take-Two's investment is protected and that Take-Two is able to continue to invest in new, fun games for the public to enjoy.  *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1982 (1975) (holding that the purpose of the Copyright Act is to encourage "and reward"

innovation).

**_Third_**, beyond creating additional incentives for production, the public has an additional interest in ensuring that creators maintain the integrity of their works by "secur[ing] the rights of [their] creative activity."  _Kurt S. Alder, Inc. v. World Bazaars, Inc._, No. 95 Civ. 5610, 1995 WL 457991 at *1 (S.D.N.Y. 1995) (denying motion to stay preliminary injunction).  The Copyright Act is designed not only to incentivize creation, but also to ensure that creators are able to reap the benefits of their creation without fear of free-riding or misappropriation, while maintaining the creative integrity over their work.  _See Midway_, 547 F. Supp. at 1015 (noting that "[t]he Copyright Act evidences a public interest in creativity by demonstrating an intent to provide an economic reward for creative expression" and further noting that the court could "conceive no public interest that [would be] furthered by allowing defendant to continue to distribute and sell its infringing [kits]" that altered the play of plaintiff's video games).

Mr. Zipperer's unauthorized Infringing Programs deprives Take-Two of both the benefits of its creative works and the ability to control how its game is designed to be played.  Andrews Decl. ¶¶ 6, 11.   This is contrary to the stated policies underlying the Copyright Act, thereby undermining the public interest in promoting these policies.

The public interest clearly favors issuance of an injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, Take-Two respectfully requests that this Court enter an order preliminarily enjoining David Zipperer from creating and/or distributing Infringing Programs.

Dated:  New York, New York
       March 23, 2018

KIRKLAND & ELLIS LLP

*/s/ Dale M. Cendali*

Dale M. Cendali
Joshua L. Simmons
Megan L. McKeown
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
megan.mckeown@kirkland.com

*Attorneys for Plaintiff*
*Take-Two Interactive Software, Inc.*