ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _8/16/18_

**TAKE-TWO INTERACTIVE SOFTWARE, INC.,**

                              Plaintiff,

            - against -                        18 Civ. 2608 (LLS)

**DAVID ZIPPERER,**                           **OPINION & INJUNCTION**
                              Defendant.

In this action plaintiff Take-Two Interactive Software, Inc. ("Take-Two") charges defendant David Zipperer with creating and distributing software programs for cheating in and manipulating Take-Two's video game Grand Theft Auto V and its multiplayer feature Grand Theft Auto Online.

Take-Two's complaint seeks relief from Mr. Zipperer for copyright infringement, contributory copyright infringement, breach of contract, tortious interference with contract, and unfair competition. It also moves, under Rule 65(a) of the Federal Rules of Civil Procedure, for an order preliminarily enjoining Mr. Zipperer from producing or distributing any computer programs that alter Take-Two's video games and thus infringe on its copyrights. Mr. Zipperer opposes that motion and moves, under Rule 12(b)(1), (2), (3), and (6) of the Federal Rules of Civil Procedure, to dismiss the complaint or in the alternative to transfer venue to the Southern District of Georgia where he resides.

For the reasons that follow, Mr. Zipperer's motion to

-1-

dismiss the complaint or to transfer venue is granted in part
and denied in part, and Take-Two's motion for a preliminary
injunction is granted.

## BACKGROUND

Take-Two is the developer and publisher of the Grand Theft
Auto video game series, including Grand Theft Auto V ("GTAV")
and its multiplayer feature Grand Theft Auto Online ("GTAO").
Compl. (Dkt. No. 1) ¶ 10; Andrews Decl. (Dkt. No. 11) ¶ 2. Take-
Two owns a copyright in GTAV which is registered in the
Copyright Office. Compl. ¶¶ 12-14; McKeown Decl. (Dkt. No. 12) ¶
10, Ex. 1. Before installing GTAV on a personal computer users
must affirmatively assent to a license agreement in which they
agree (1) "not to . . . prepare derivative works based on, or
otherwise modify the Software, in whole or in part," (2) "not to
. . . restrict or inhibit any other user from using and enjoying
any online features of the Software," and (3) "not to . . .
cheat or utilize any unauthorized robot, spider, or other
program in connection in connection with any online features of
the Software." Compl. ¶¶ 17-18; Andrews Decl. ¶ 3.

Mr. Zipperer created and sells two computer programs called
Menyoo and Absolute that allow users of GTAV multiplayer feature
GTAO to perform unauthorized actions including advantage
themselves and interfere with and "grief" the gameplay of other
players. Compl. ¶¶ 1-2, 19; Andrews Decl. ¶¶ 5-9.

Take-Two claims that by creating and selling those programs Mr. Zipperer is in breach of the license agreement. Compl. ¶¶ 17-20, 51-55. It further claims that by creating and selling those programs Mr. Zipperer is infringing its copyright in GTAV. Id. ¶¶ 20, 30-34.

Take-Two filed a complaint seeking injunctive and monetary relief against Mr. Zipperer, and moved to preliminarily enjoin Mr. Zipperer's ongoing infringement. Mr. Zipperer opposes the motion for a preliminary injunction on the grounds that (1) this court lacks subject-matter jurisdiction over the action, (2) this court lacks personal jurisdiction over him, and (3) the motion is moot because he has stopped working on and selling the Menyoo and Absolute programs and does not intend to resume that conduct.

Mr. Zipperer also moves to dismiss the complaint based on those same jurisdictional grounds as well as for improper venue and (aside from the breach of contract claim) for failure to state a claim upon which relief can be granted. Alternatively, he seeks to transfer venue to the Southern District of Georgia where he resides.

## DISCUSSION

### 1. Subject Matter Jurisdiction

Take-Two predicates subject matter jurisdiction on 28 U.S.C. § 1331 which grants to district courts "original

-3-

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," because its copyright infringement claims arises under the Copyright Act, 17 U.S.C. § 101 et seq. Compl. ¶ 8. Mr. Zipperer argues that the complaint does not properly raise a federal copyright claim because it fails adequately to allege that he infringed any of Take-Two's exclusive rights under 17 U.S.C. § 106. According to Mr. Zipperer, Take-Two's right to relief lies only in breach of contract, a state law claim over which this court lacks jurisdiction.[1]

"Federal question jurisdiction exists where a well-pleaded complaint 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Perpetual Secs., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002) (citation omitted). "Simply raising a federal issue in a complaint will not automatically confer federal question jurisdiction. Rather, we ask 'whether the cause of action alleged is so patently without merit as to justify . . . the court's dismissal for want of jurisdiction.'" Id., quoting Duke Power Co. v. Carolina Env. Study Grp., 438 U.S. 59, 70, 98 S.

---

[1] "Where subject matter jurisdiction is lacking, denial of a motion for a preliminary injunction is required." Native Fed'n of Madre De Dios River & Tributaries v. Bozovich Timber Prod., Inc., 491 F. Supp. 2d 1174, 1180 (Ct. Int'l Trade 2007), citing U.S. Ass'n of Imps. of Textiles and Apparel v. United States, 413 F.3d 1344, 1348 (Fed. Cir. 2005).

Ct. 2620, 2629 (1978) (emphasis and ellipsis in Duke Power).

Here, the complaint adequately states a claim for copyright infringement. The court therefore has jurisdiction over the subject matter of this case.

"To state a claim for copyright infringement, a plaintiff must allege that the plaintiff owned a valid copyright and the defendant 'violated one of the exclusive rights that 17 U.S.C. § 106 bestows upon a copyright holder.'" Great Minds v. FedEx Office & Print Servs., 886 F.3d 91, 94 (2d Cir. 2018), quoting Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 166 (2d Cir. 2016) (alterations omitted). The complaint plainly alleges that Take-Two owns a valid copyright in in GTAV. Compl. ¶¶ 12-16. It alleges that Mr. Zipperer created and distributed computer programs which are alternative versions of GTAV based on GTAV, i.e., derivative works, without Take-Two's authorization. Id. ¶¶ 1, 19-20, 33. And it alleges that Mr. Zipperer used GTAV on his computer after breaching his license agreement and therefore without Take-Two's authorization. Id.; see MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993) ("a 'copying' for purposes of copyright law occurs when a computer program is transferred from a permanent storage device to a computer's RAM."). [2] Section 106 of the Copyright Act grants to

---

[2] The user license agreement gives players authority to make copies of GTAV on their computer's RAM. Absent the license, such copies are unauthorized acts of infringement.

the copyright owner the exclusive right "to reproduce the copyrighted work in copies" and "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(1)-(2).

Accordingly, the complaint adequately states a claim to relief for infringement under the Copyright Act and properly invokes federal question jurisdiction under 28 U.S.C. § 1331.

## 2. **Personal Jurisdiction**

Mr. Zipperer resides in Georgia and has few, if any, contacts with New York. Compl. ¶ 7; Zipperer Decl. (Dkt. No. 25) ¶¶ 2-15, 22-23. Therefore, he argues, he is not subject to personal jurisdiction in New York. "A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction." In re Rationis Enters., Inc. of Panama, 261 F.3d 264, 270 (2d Cir. 2001).

But Mr. Zipperer consented to this court's jurisdiction in the user license agreement that he accepted in order to play GTAV. It states:

> Unless expressly waived by Licensor in writing for the particular instance or contrary to local law, the sole and exclusive jurisdiction and venue for actions related to the subject matter hereof shall be the state and federal courts in Licensor's principal corporate place of business (New York County, New York, U.S.A.). You and Licensor consent to the jurisdiction of such courts and agree that process may be served in the manner provided herein for giving notices or otherwise as allowed by New York state or federal law.

Andrews Decl. ¶ 3, Ex. 1 at 6.

Mr. Zipperer does not dispute that he agreed to the terms

-6-

of the license agreement in order to play GTAV. Second Zipperer

Decl. (Dkt. No. 39-1) ¶¶ 14-15. However, he argues, the

agreement should not be enforced under the four-part test

articulated in Phillips v. Audio Active Ltd., 494 F.3d 378 (2d

Cir. 2007) used to determine the enforceability of a forum

selection clause.

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.
>
> If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

Phillips, 494 F.3d at 383-84 (internal quotation marks and

citations omitted).

Mr. Zipperer concedes that the second and third factors

weigh in favor of enforcing the forum selection clause in the

user agreement because the clause is mandatory and the claims

involved in this suit are subject to that clause. He challenges

enforcement of the forum selection clause under the first and

fourth factors. He argues that it was not reasonably

communicated to him and that its enforcement would be

unreasonable and unjust.

-7-

In his declarations, Mr. Zipperer states that he was forced to accept the terms of the user agreement in order to play GTAV and was not able to negotiate or to opt out of the user license agreement. Second Zipperer Decl. ¶ 15. Mr. Zipperer has a ninth grade education. Id. ¶ 2. He did not read the user agreement and the little he did read was difficult for him to understand. Id. ¶ 16. The user agreement did not warn him that he could be sued in New York for creating a "cheat menu" for the game. Id. ¶ 17. The forum selection clause is in the sixth page of the user agreement and in the same small type as the rest of the agreement. Id. ¶ 19. He did not read or understand the forum selection clause in the user agreement prior to this case, did not know that the user agreement contained a forum selection clause, and did not know that the forum selection clause meant that he agreed to be sued in New York. Id. ¶ 20. Take-Two's website did not encourage him to examine the user agreement. Id. ¶ 21. Mr. Zipperer resides in Georgia, is unemployed, and lacks the financial resources to litigate this case in New York. Zipperer Decl. ¶¶ 2-3, 25-30. It would be extremely inconvenient for him to litigate this case in New York and it would be far more convenient and less expensive for him to litigate this case in the Southern District of Georgia. Id. ¶ 31.

However, a forum selection clause that is in clear and unambiguous language, as it is here, is enforceable even if it

-8-

is in fine print. Starkey v. G Adventures, Inc., 796 F.3d 193,
197 (2d Cir. 2015). And "Mere absence of negotiation over the
terms of a contract does not render a forum-selection clause
unenforceable." Medoil Corp. v. Citicorp, 729 F. Supp. 1456,
1459 (S.D.N.Y. 1990), citing Karl Koch Erecting Co. v. N.Y.
Convention Ctr. Dev. Corp., 838 F.2d 656, 659 (2d Cir. 1988).

That Mr. Zipperer did not read or understand the forum
selection clause "is immaterial as a matter of law, because 'a
signatory to a contract is presumed to have read, understood and
agreed to be bound by all terms, including the forum selection
clauses, in the documents he or she signed.'" Sun Forest Corp.
v. Shvili, 152 F. Supp. 2d 367, 382 (S.D.N.Y. 2001), quoting
Orix Credit Alliance, Inc. v. Brown, No. 93 Civ. 1019 (SWK),
1994 WL 392240, at *4 (S.D.N.Y. July 27, 1994). As the Supreme
Court noted long ago:

> It will not do for a man to enter into a contract, and, when
> called upon to respond to its obligations, to say that he did
> not read it when he signed it, or did not know what it contained.
> If this were permitted, contracts would not be worth the paper
> on which they are written. But such is not the law. A contractor
> must stand by the words of his contract; and, if he will not
> read what he signs, he alone is responsible for his omission.

Upton v. Tribilcock, 91 U.S. (1 Otto) 45, 50 (1875).

Mr. Zipperer's claim that Take-Two did not encourage him to
examine the user agreement is contradicted by the fact that
Take-Two informs players of the user agreement at several stages
before they can play the game and users must affirmatively

assent to the terms of the user agreement several times,
including by clicking "I ACCEPT," before being able to play GTAV
and GTAO. Andrews Decl. ¶ 3; Second Andrews Decl. (Dkt. No. 37)
¶¶ 2-7, 9-13; see Meyer v. Uber Techs., Inc., 868 F.3d 66, 75
(2d Cir. 2017) ("Courts routinely uphold clickwrap agreements
for the principal reason that the user has affirmatively
assented to the terms of agreement by clicking 'I agree.'").

Lastly, as to his claim that litigating in New York is
extremely inconvenient for him and that litigating in Georgia
would be far more convenient for him, "Second Circuit case law
is clear that mere difficulty and inconvenience is insufficient
to establish the unreasonableness of enforcing a forum selection
clause." Jalee Consulting Grp., Inc. v. XenoOne, Inc., 908 F.
Supp. 2d 387, 396 (S.D.N.Y. 2012), citing Phillips, 494 F.3d at
393 (enforcing forum selection clause where plaintiff's averment
suggested that that litigation in the selected forum "may be
more costly or difficult, but not that it is impossible.").

Accordingly, Take-Two has made an adequate showing that
this court has jurisdiction over Mr. Zipperer.

## 3. Venue

Although "no allegation as to venue is required in the
complaint," Ripperger v. A.C. Allyn & Co., 113 F.2d 332, 334 (2d
Cir. 1940), if a defendant moves to dismiss for improper venue
the burden is on the plaintiff to show that venue is proper in

the forum district. Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353,

355 (2d Cir. 2005); Arma v. Buyseasons, Inc., 591 F. Supp. 2d

637, 648 (S.D.N.Y. 2008). Where, as here, "the court chooses to

rely on pleadings and affidavits, the plaintiff need only make a

prima facie showing of venue." Gulf Ins. Co., 417 F.3d at 355,

quoting CutCo Indus. v. Naughton, 806 F.2d 361, 364 (2d Cir.

1986) (alterations omitted).

Mr. Zipperer argues that venue is improper in this district

because he does not reside or conduct business in this district

and the conduct alleged in the complaint did not occur in this

district. Zipperer Decl. ¶¶ 2-15, 22-24.

However, Mr. Zipperer agreed to venue in this district in

the license agreement, Andrews Decl. Ex. 1 at 6 ("the sole and

exclusive jurisdiction and venue for actions related to the

subject matter hereof shall be the state and federal courts in

Licensor's principal corporate place of business (New York

County, New York, U.S.A.)"), and the motion to dismiss for

improper venue must be denied.

Mr. Zipperer argues that under 28 U.S.C. § 1404(a) venue

should nonetheless be transferred to the Southern District of

Georgia where he resides because it would be more convenient and

affordable to him. Zipperer Decl. ¶¶ 24-31. Section 1404(a)

provides that "For the convenience of parties and witnesses, in

the interest of justice, a district court may transfer any civil

-11-

action to any other district or division where it might have

been brought or to any district or division to which all parties

have consented." 28 U.S.C. § 1404(a).

In light of the forum selection clause, however,

transferring this case under Section 1404(a) is not appropriate.

> In the typical case not involving a forum-selection clause, a
> district court considering a § 1404(a) motion (or a forum non
> conveniens motion) must evaluate both the convenience of the
> parties and various public-interest considerations. Ordinarily,
> the district court would weigh the relevant factors and decide
> whether, on balance, a transfer would serve "the convenience of
> parties and witnesses" and otherwise promote "the interest of
> justice." § 1404(a).

> The calculus changes, however, when the parties' contract
> contains a valid forum-selection clause, which "represents the
> parties' agreement as to the most proper forum." Stewart, 487
> U.S., at 31, 108 S. Ct. 2239. The "enforcement of valid forum-
> selection clauses, bargained for by the parties, protects their
> legitimate expectations and furthers vital interests of the
> justice system." Id., at 33, 108 S. Ct. 2239 (KENNEDY, J.,
> concurring). For that reason, and because the overarching
> consideration under § 1404(a) is whether a transfer would promote
> "the interest of justice," "a valid forum-selection clause
> [should be] given controlling weight in all but the most
> exceptional cases." Id., at 33, 108 S. Ct. 2239 (same).

> * * * *

> When parties agree to a forum-selection clause, they waive the
> right to challenge the preselected forum as inconvenient or less
> convenient for themselves or their witnesses, or for their
> pursuit of the litigation. A court accordingly must deem the
> private-interest factors to weigh entirely in favor of the
> preselected forum. As we have explained in a different but
> "'instructive'" context, Stewart, supra, at 28, 108 S. Ct. 2239,
> "[w]hatever 'inconvenience' [the parties] would suffer by being
> forced to litigate in the contractual forum as [they] agreed to
> do was clearly foreseeable at the time of contracting." The
> Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17-18, 92 S. Ct.
> 1907, 32 L. Ed. 2d 513 (1972); see also Stewart, supra, at 33,
> 108 S. Ct. 2239 (KENNEDY, J., concurring) (stating that Bremen's
> "reasoning applies with much force to federal courts sitting in
> diversity").

Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of
Texas, 571 U.S. 49, 62-64, 134 S. Ct. 568, 581-82 (2013)
(footnote omitted) (alterations in original).

Because the private-interest factors under Section 1404(a)
weigh in favor of venue in this district and Mr. Zipperer has
not adequately demonstrated public-interest considerations to
overcome the controlling weight of the forum selection clause,
the motion to transfer venue is denied.

## 4. Failure to State a Claim

Mr. Zipperer argues that, with the exception of its breach
of contract claim, the complaint fails to state a claim upon
which relief can be granted.

On a motion to dismiss under Rule 12(b)(6) the court
accepts all factual allegations in the complaint as true, and
draws all reasonable inferences in the plaintiff's favor. Kelly-
Brown v. Winfrey, 717 F.3d 295, 304 (2d Cir. 2013). To survive a
motion to dismiss, a complaint must plead "enough facts to state
a claim to relief that is plausible on its face." Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974
(2007). A claim is facially plausible "when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937,
1949 (2009).

## Direct and Contributory Copyright Infringement

For the reasons discussed above, at pp. 5-6, the complaint states a claim for copyright infringement. Mr. Zipperer does not dispute that if the allegations in the complaint support a claim for copyright infringement they support a claim for contributory copyright infringement. Mem. in Supp. of Mot. to Dismiss (Dkt. No. 24) at 5.

## Tortious Interference with a Contract

Mr. Zipperer argues that Take-Two's claim for tortious interference with a contract must fail because (1) Take-Two cannot show that his conduct caused other GTAV player to sever their relationship with Take-Two and (2) any harm to Take-Two caused by other GTAV players using the Menyoo or Absolute cheat programs is attributable to those players and not to Mr. Zipperer.

Take-Two adequately states a claim for tortious interference with a contract.

First, Take-Two need not show that its relationship with other GTAV players was severed, but that its agreement with other GTAV players was breached. Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006). Here, Take-Two alleges that other players breached their user agreement with Take-Two by using the cheat programs that Mr. Zipperer made and sold. Compl. ¶¶ 57, 60.

-14-

Second, Mr. Zipperer can be liable for tortious interference with a contract if Take-Two establishes, among other things, that he induced or intentionally procured other players' breach of the user agreement. Beecher v. Feldstein, 8 A.D.3d 597, 598, 780 N.Y.S.2d 153, 154 (2d Dep't 2004); Kirch, 449 F.3d at 401. Take-Two alleges that Mr. Zipperer induced and continues to induce other GTAV players to breach their user agreements with Take-Two by creating and selling the cheat programs to them. Compl. ¶¶ 2, 60-61.

## Unfair Competition

Take-Two asserts a common law claim for unfair competition based on allegations that (1) Mr. Zipperer interfered with the proper operation of GTAV and with the gaming experience of players who abide by the user agreement, and (2) Mr. Zipperer misappropriated Take-Two's labor and expenditures in bad faith. Compl. ¶¶ 64-68. Mr. Zipperer argues that the claim for unfair competition is preempted by Section 301(a) of the Copyright Act.

Section 301(a) preempts state law claims to the extent that the state law claim seeks "to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004), citing 17 U.S.C. § 301(a). It does not preempt state law claims that "include any extra elements that

-15-

make it qualitatively different from a copyright infringement claim." Id. "To determine whether a claim is qualitatively different, we look at 'what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'" Id. at 306, quoting Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992) (brackets in Briarpatch).

Here, Take-Two's claim for unfair competition is preempted.

Take-Two argues that its claim for unfair competition is qualitatively different from its copyright infringement claims because it relies on the allegation that Mr. Zipperer "created code to manipulate Take-Two's software to suppress the proper operation of Take-Two's technology and, as a result, changed the experience of GTAV players such that they would believe that the official GTAV contained features or errors that were not created by Take-Two." Opp. to Def.'s Mot. to Dismiss (Dkt. No. 36) at 31. Relying on LivePerson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501 (S.D.N.Y. 2015), Take-Two argues that "such conduct is unfair competition as it 'would either be independently illegal or would constitute Defendant passing off Plaintiff's product as its own.'" Opp. to Def.'s Mot. to Dismiss at 31, quoting LivePerson, 83 F. Supp. 3d at 519.

But preemption was not an issue in LivePerson. Take-Two does not allege here that Mr. Zipperer is passing off his cheat

-16-

programs as though they are Take-Two's. To the extent that Mr.
Zipperer's conduct is independently illegal it is so because it
violates the Copyright Act, a claim for which the complaint
already seeks relief. Accordingly, the unfair competition claim
is not qualitatively different from the copyright infringement
claim.

Take-Two also argues that its claim is qualitatively
different from a copyright infringement claim because it is
based on the claim that Mr. Zipperer "misappropriated Take-Two's
labor an expenditures in bad faith, Compl. ¶¶ 66-68, which is
'commercially wrongful in a more serious way.'" Opp. to Def.'s
Mot. to Dismiss at 32. However, it is well established that
"state law claims that rely on the misappropriation branch of
unfair competition are preempted." Warner Bros. v. ABC, 720 F.2d
231, 247 (2d Cir. 1983), citing Durham Industries, Inc. v. Tomy
Corp., 630 F.2d 905, 918-19 (2d Cir. 1980) (affirming dismissal
of unfair competition claim as preempted by the Copyright Act).
Additionally, claims based on "commercial immorality" "are
virtually synonymous for wrongful copying and are in no
meaningful fashion distinguishable from infringement of a
copyright." NBA v. Motorola, Inc., 105 F.3d 841, 851 (2d Cir.
1997).

## 5. Preliminary Injunction

Take-Two seeks to preliminarily enjoin Mr. Zipperer from

-17-

infringing Take-Two's copyrights in its video games, creating derivative works based upon any portion of its video games, producing or distributing any computer programs that alter its video games, including without limitation Menyoo and Absolute, and participating or assisting in any such infringing activity.

"The Copyright Act of 1976 authorizes courts to 'grant temporary and final injunctions on such terms as [they] may deem reasonable to prevent or restrain infringement of a copyright.'" Salinger v. Colting, 607 F.3d 68, 75 (2d Cir. 2010), quoting 17 U.S.C. § 502(a) (brackets in Salinger). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867 (1997) (emphasis in original).

## Likelihood of Success on the Merits

As a party seeking a preliminary injunction, Take-Two is not required to prove its claim, but only to show that it is

-18-

likely to succeed on the merits. Glossip v. Gross, 576 U.S.
____, ____, 135 S. Ct. 2726, 2792 (2015).

Take-Two seeks an injunction for its copyright infringement
claim. "A claim of direct copyright infringement requires proof
that (1) the plaintiff had a valid copyright in the work, and
(2) the defendant infringed the copyright by violating one of
the exclusive rights that 17 U.S.C. § 106 bestows upon the
copyright holder." Barnesandnoble.com, LLC, 839 F.3d at 166.

Take-Two has shown that it has a valid copyright in GTAV.
McKeown Decl. ¶ 10, Ex. 1; 17 U.S.C. § 410(c) ("In any judicial
proceedings the certificate of a registration made before or
within five years after first publication of the work shall
constitute prima facie evidence of the validity of the copyright
and of the facts stated in the certificate.").

Take-Two has also submitted unrebutted declarations showing
that Mr. Zipperer has infringed its copyright in two ways.
First, he has created an alternative version of GTAV which is
based on Take-Two's GTAV but with added elements that allow its
users to use features not available in the original version of
GTAV. Andrews Decl. ¶¶ 5-11. That likely constitutes a
derivative work which Take-Two has the exclusive right to create
under 17 U.S.C. § 106. Second, Mr. Zipperer created unauthorized
copies of GTAV when he ran GTAV on his computer after creating
the cheat programs because using GTAV violated the terms of his

-19-

license. The user agreement authorized Mr. Zipperer to run GTAV
on his computer provided that he complied with the terms of that
agreement which included a prohibition on modifying the program
and creating derivative works based on the program. Id. ¶ 3. By
creating Menyoo and Absolute he likely violated the terms of the
user agreement. His continued use of GTAV, and the copies he
created on his computer each time he ran the program, are thus
likely beyond the scope of his license from Take-Two and
constitute infringement.

Accordingly, Take-Two has shown that it is likely to
succeed on the merits of its copyright infringement claim.

### Irreparable Harm

"Any party seeking a preliminary injunction 'must
demonstrate that it will suffer irreparable harm in the absence
of the requested relief.'" Sussman v. Crawford, 488 F.3d 136,
140 (2d Cir. 2007), quoting Latino Officers Ass'n v. Safir, 170
F.3d 167, 171 (2d Cir. 1999). Irreparable harm is "harm that (a)
occurs to the parties' legal interests and (b) cannot be
remedied after a final adjudication, whether by damages or a
permanent injunction." Salinger, 607 F.3d at 81.

Take-Two identifies three forms of irreparable harm. First,
the cheat programs created and distributed by Mr. Zipperer cause
it to lose control over its carefully orchestrated plan for how
GTAV's multiplayer feature GTAO is designed to be played. Next,

-20-

the programs cause harm to Take-Two's reputation among video game consumers for maintaining integrity of its gaming environment which discourages users from purchasing and playing Take-Two's video games. Finally, the cheat programs undercut Take-Two's price point. That is because Take-Two offers digital currency to users of GTAO which they can use to enhance their gaming experience by buying additional features. Users can purchase the currency from Take-Two. But the cheat programs allow users to get unlimited currency without purchasing it from Take-Two. That undermines Take-Two's pricing model.

Take-Two argues that monetary damages are insufficient to compensate it for those harm because Take-Two has no way of knowing how much revenue it will lose as a result of Mr. Zipperer's conduct. It is impossible to quantify the reputational harm that Take-Two will suffer from losing its credibility with video game players who do not use the cheat programs, it is impossible to calculate the number of players who stop playing GTAV's multiplayer feature GTAO due to cheating and "griefing" by users of Menyoo or Absolute, and it is impossible to know how many consumers purchased Mr. Zipperer's cheat programs to have the benefit of unlimited digital currency instead of purchasing it from Take-Two. Andrews Decl. ¶¶ 10-15; see WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 285 (2d Cir. 2012) (holding that a preliminary injunction is permitted where

"plaintiffs' losses would be difficult to measure and monetary damages would be insufficient to remedy the harms").

Lastly, Take-Two argues that there is a high risk that even if its harm could be compensated with a damages award, there is a high risk that Mr. Zipperer would not be able to satisfy such an award as Mr. Zipperer appears to be insolvent. See WPIX, 691 F.3d at 286 ("The unlikelihood that defendants would, in any event, be able to satisfy a substantial damage award further supports a finding of irreparable harm.") (internal quotation marks and alterations omitted); Brenntag Int'l Chemicals, Inc. v. Bank of India, 175 F.3d 245, 250 (2d Cir. 1999) ("courts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents.").

Mr. Zipperer does not dispute any of that. And his declaration makes clear that he is unemployed and does not have the financial means to travel to New York or to pay for an attorney. Zipperer Decl. ¶¶ 26-28.[3] Accordingly, Take-Two has made an adequate showing that it is likely to suffer irreparable harm in the absence of a preliminary injunction.

## Mootness

Rather than rebut Take-Two's showing of irreparable harm,

---

[3] Mr. Zipperer's attorney, Joel B. Rothman, Esq., of Schneider Rothman Intellectual Property Law Group, PLLC in Boca Raton, Florida, is representing Mr. Zipperer pro bono, through a referral by the Electronic Frontier Foundation (www.eff.org). Zipperer Decl. ¶ 28; Notice of Appearance (Dkt. No. 20).

Mr. Zipperer argues that the application for an injunction is moot because he has ceased the conduct that Take-Two seeks to enjoin. He states in his declarations that:

> I have stopped distributing the "Menyoo" "cheat menu" and do not intend to resume distribution in the future.

Zipperer Decl. ¶ 17.

> I have stopped all work on Absolute. I will not be performing any more computer programming for Absolute in the future. I have informed the individuals responsible for Absolute that I will not assist them in the future. I have no intention of working on any other "cheat menu" for GTAV.

Second Zipperer Decl. ¶ 5.

An application for an injunction is moot "where the problem sought to be remedied has ceased, and where there is 'no reasonable expectation that the wrong will be repeated.'" Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996), quoting Preiser v. Newkirk, 422 U.S. 395, 402, 95 S. Ct. 2330, 2335 (1975). That is because "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109, 118 S. Ct. 1003, 1020 (1998) (citation and alteration omitted).

But as Mr. Zipperer acknowledges, "The test for mootness in cases such as this is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave 'the defendant free to return to his old ways.'" United States v. Concentrated

-23-

Phosphate Export Ass'n, 393 U.S. 199, 203, 89 S. Ct. 361, 364 (1968) (citation and alteration omitted).

Here, all that Mr. Zipperer presents is his own statement that he does not intend to resume working on and distributing "cheat menus" for GTAV. That is insufficient to satisfy his burden to show mootness. Id. ("But here we have only appellees' own statement that it would be uneconomical for them to engage in any further joint operations. Such a statement, standing alone, cannot suffice to satisfy the heavy burden of persuasion which we have held rests upon those in appellees' shoes.").

Moreover, the record shows that Mr. Zipperer has made similar statements in the past only to disregard them later. In response to Take-Two informing him that operating Menyoo violated the terms of his user agreement and infringed Take-Two's copyright, Mr. Zipperer agreed to cease his activities and shut down Menyoo. McKeown Decl. ¶¶ 3-4. But he then secretly started developing and distributing a different program called Absolute, which like Menyoo, alters GTAV's multiplayer feature. Andrews Decl. ¶¶ 5-9. Mr. Zipperer bears "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again . . . ." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000). Mr. Zipperer's statement that he has no control over Absolute does little to persuade the

-24-

court that "there is no reasonable expectation that the wrong
will be repeated," United States v. W. T. Grant Co., 345 U.S.
629, 633, 73 S. Ct. 894, 897 (1953), as he has already shown
that he can develop (and has developed) a new cheat program that
operates the same way.

Accordingly, Take-Two's application is not moot.

## Balance of Equities

On an application for a preliminary injunction courts "must
balance the competing claims of injury and must consider the
effect on each party of the granting or withholding of the
requested relief." Winter, 555 U.S. at 24, 129 S. Ct. at 376
(citation omitted). As discussed above, pp. 20-22, Take-Two has
identified the harms it will suffer absent an injunction. Mr.
Zipperer has identified no injury that he will suffer if an
injunction is issued. In any event, a defendant does not suffer
a legal harm by the fact that it cannot continue to infringe on
the plaintiff's copyright. See WPIX, 691 F.3d at 287. The
balance of equities, therefore, tips in Take-Two's favor.

## The Public Interest

"[T]he court must ensure that the 'public interest would
not be disserved' by the issuance of a preliminary injunction."
Salinger, 607 F.3d at 80, quoting eBay, Inc. v. MercExchange,
547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006). As the Second
Circuit held in Salinger, to the extent that copyright law

-25-

promotes the public good "by providing individuals a financial
incentive to contribute to the store of knowledge, the public's
interest may well be already accounted for by the plaintiff's
interest." Id. at 82.

Aside from denying that the cheat programs infringe Take-
Two's copyright, Mr. Zipperer does not argue that the public
interest would be served by permitting him to continue working
on and distributing programs that alter GTAV.

Furthermore, legitimate users of GTAV are harmed by
programs such as Menyoo and Absolute that permit their users to
disadvantage players who do not use the cheat programs and give
to their users unlimited digital currency with which to purchase
added features that GTAV's legitimate users do not have access
to or must purchase from Take-Two. Additionally, the public's
interest in protecting Take-Two's investment in creating video
games and incentivizing it to continue such investment is
promoted by issuing the requested injunction. See Fogerty v.
Fantasy, Inc., 510 U.S. 517, 527, 114 S. Ct. 1023, 1030 (1994)
("copyright law ultimately serves the purpose of enriching the
general public through access to creative works"); Warner Bros.
Entm't Inc. v. RDR Books, 575 F. Supp. 2d 513, 553 (S.D.N.Y.
2008) ("to serve the public interest, copyright law must prevent
the misappropriation of the skills, creative energies, and
resources which are invested in the protected work.") (quotation

marks, alteration, and citation omitted).

## CONCLUSION

Mr. Zipperer's motion to dismiss the complaint or to transfer venue (Dkt. No. 23) is granted in part and denied in part. The claim for unfair competition is dismissed. In all other respects, the motion is denied.

Take-Two's motion for a preliminary injunction (Dkt. No. 9 ) is granted.

## INJUNCTION

Mr. Zipperer is hereby preliminarily enjoined from (a) directly or indirectly infringing Take-Two's copyrights in Grand Theft Auto V and its other video games; (b) creating derivative works based upon any portion of Grand Theft Auto V or Take-Two's other copyrighted video games; (c) producing or distributing any computer programs that alter Grand Theft Auto V or Take-Two's other copyrighted video games, including without limitation Menyoo and Absolute; and (d) participating or assisting in any such infringing activity.

So ordered.

Dated:     New York, New York
           August 16, 2018

                                    Louis L. Stanton
                              LOUIS L. STANTON
                              U.S.D.J.

-27-